SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

## Citizens United Reciprocal Exchange v. Sabrina A. Perez, et al. (A-67-13) (073384)

**Argued March 3, 2015 -- Decided August 13, 2015**

**FERNANDEZ-VINA, J., writing for a unanimous Court.**

In this appeal, the Court considers whether the issuer of a basic automobile insurance policy, voided due to a fraudulent application, must pay the liability claims of innocent third parties.

In March 2010, defendant Sabrina A. Perez applied for an automobile insurance policy with Citizens United Reciprocal Exchange (CURE). Perez chose a "basic" coverage policy with an optional $10,000 coverage limit for third-party bodily injury liability. Although CURE's application required Perez to list all household residents of driving age, she failed to disclose defendant Luis Machuca. Effective March 23, 2010, CURE issued an automobile insurance policy covering Perez's 1997 Honda Accord. Had Perez identified Machuca on her application, CURE would not have issued the policy due to Machuca's poor driving record.

On April 21, 2010, Machuca, operating Perez's automobile with defendant Jonathan Quevedo as a passenger, was involved in an accident with defendant-respondent Dexter Green. Green filed a personal-injury claim against Perez's policy, as did Machuca. CURE denied both claims and informed Perez that her policy was void from the outset due to her fraudulent failure to disclose Machuca on her application. CURE then filed a complaint. It sought a declaratory judgment, including a finding that it had no obligation to cover any claims that might arise from the accident, including those of Green, the innocent third party. The court determined that Perez's policy could be rescinded and voided, but noted that in situations where an insurance policy is voided as a result of misrepresentations made by the insured, innocent third parties are nonetheless entitled to coverage. Relying in part on New Jersey Manufacturers Insurance Co. v Varjabedian, 391 N.J. Super. 253 (App. Div.), certif. denied, 192 N.J. 295 (2007), the trial court determined that Green was entitled to $15,000 per-person/$30,000 per-accident coverage, which it deemed to be the minimum mandated by New Jersey law.

CURE appealed, and, in a split decision, the Appellate Division affirmed. 432 N.J. Super. 526 (App. Div. 2013). The majority held that an insurer may void a policy for fraud even when a claim is filed by an innocent third party. However, relying on Varjabedian, the majority added that a voided policy is to be molded to the mandatory minimum liability coverage of $15,000/$30,000, and concluded that Green was entitled to $15,000. In contrast, the dissent asserted that an innocent injured third party should not be entitled to more coverage than that provided under the issued policy. The dissent found Varjabedian inapplicable because it addressed a "standard policy" rather than a "basic policy" like the one at issue here. It concluded that, while CURE could void the policy as to Perez and Machuca, it could not void the policy as to Green, the innocent third party. However, the dissent explained that Green was entitled only to the amount of liability coverage provided by the original policy – the optional $10,000 liability limit.

CURE appealed as of right pursuant to Rule 2:2-1(a)(2), and filed a petition of certification seeking review of other issues. This Court granted CURE's petition. 217 N.J. 292 (2014).

**HELD:** Where a policyholder elects to add the basic policy's optional $10,000 coverage for third-party bodily injury in the original contract, the insurer shall be liable to innocent third parties for the contracted $10,000 amount as the minimal amount available under New Jersey's compulsory system of automobile insurance coverage, even when that basic policy is later voided due to a fraudulent application. In contrast, when an insured elects not to add the basic policy's optional $10,000 coverage in their original contract, the insurer shall not be held liable to any injured, innocent third-party claimants under that contract.

1. The law in New Jersey is settled that where a factual misrepresentation is made in an insurance application, rescission may be justified if the insurer relied on the misrepresentation in determining whether to issue the policy. It is undisputed that Perez, by failing to list Machuca as a household member of driving age, made a material misrepresentation to CURE from the time of her application through the time of the accident. Consequently, CURE

was justified in revoking Perez's policy based on this misrepresentation.  However, the Court has repeatedly held that rescission of a policy due to an insured's material misrepresentation at the policy's inception does not mean that the insurer escapes liability as to innocent third parties.  (pp. 9-11)

2.  Turning to the extent of CURE's liability for Green's claims, the Court notes that, prior to 1998, New Jersey automobile insurance law required all drivers to maintain mandatory bodily injury liability protection of at least $15,000 per individual and $30,000 per accident, in a scheme known as the "standard policy."  N.J.S.A. 39:6A-2(n).  In 1998, as part of the Automobile Insurance Cost Reduction Act (AICRA), the New Jersey Legislature authorized a more affordable basic policy as an alternative to the benefits covered under the standard policy.  N.J.S.A. 39:6A-3.1.  Although, in contrast to the standard policy, the basic policy does not mandate personal liability insurance, it explicitly offers applicants the option of adding personal injury liability coverage in an amount up to $10,000.  N.J.S.A. 39:6A-3.1(c).  (pp. 11-14)

3.  Pre-AICRA, New Jersey's appellate courts interpreted the relevant statutory schemes to require $15,000/$30,000 coverage for innocent third parties, which they deemed to be the mandatory minimum under New Jersey law.  Post-AICRA, the Law Division, in Mannion v. Bell, 380 N.J. Super. 259, 260-61 (Law Div. 2005), determined that AICRA's basic policy, with its optional liability insurance, overrode the minimum compulsory insurance.  However, in New Jersey Manufacturers Insurance Co. v Varjabedian, 391 N.J. Super. 253 (App. Div.), certif. denied, 192 N.J. 295 (2007), the Appellate Division overturned Mannion, concluding that, in light of the absence of a mandatory minimum amount of liability coverage in the basic policy, the required compulsory insurance liability limits remained $15,000/$30,000.  (pp. 14-16)

4.  The Court expressly rejects the Appellate Division majority's conclusion that CURE must provide, on a rescinded basic policy, up to $15,000 liability coverage based on the reasoning set forth in Varjabedian.  As the Appellate Division dissent determined, Varjabedian is factually inapplicable here.  Unlike the standard policy at issue in Varjabedian, this appeal involves a basic policy, which, under N.J.S.A. 39:6A-3.1(c), mandates no minimum bodily injury coverage but provides that the policyholder may elect to purchase such coverage in an amount up to $10,000.  Thus, the question is what amount, if any, an innocent third party may recover under a voided basic policy that includes the optional $10,000 of coverage permitted by N.J.S.A. 39:6A-3.1(c).  (pp. 16-17)

5.  Where a policy is rescinded due to an insured's fraud, a claimant under the policy must be evaluated as if he or she held the status to which he or she would have been entitled absent the fraud.  Here, Perez contracted for third-party bodily injury liability coverage in the amount of $10,000.  Given that this optional coverage is created by statute and is part of New Jersey's comprehensive scheme of automobile insurance coverage, it would be both unjust and contrary to public policy to invalidate and disregard this minimal amount of liability coverage bargained for by the insured.  Likewise, it would be improper to hold the insurer liable for an amount in excess of that for which it had previously contracted.  Accordingly, the Court concludes that where an insured elects to add the basic policy's $10,000 coverage for third-party bodily injury, the insurer shall be liable to innocent third parties for the contracted $10,000 amount as the minimal amount available under New Jersey's compulsory system of automobile insurance coverage, even when that basic policy is later voided.  Thus, CURE is liable to Green in the amount of $10,000, the optional coverage amount for which Perez contracted when she purchased the policy.  (pp. 17-19)

The judgment of the Appellate Division is **REVERSED**.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, PATTERSON, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE FERNANDEZ-VINA's opinion.**

CITIZENS UNITED RECIPROCAL
EXCHANGE,

    Plaintiff-Appellant,

        v.

SABRINA A. PEREZ, LUIS
MACHUGA, and JONATHAN
QUEVEDO,

    Defendants,

        and

DEXTER GREEN and PROGRESSIVE
GARDEN STATE INSURANCE
COMPANY,

    Defendants-Respondents.


        Argued March 3, 2015 – Decided August 13, 2015

        On certification to and appeal from the
        Superior Court, Appellate Division, whose
        opinion is reported at 432 N.J. Super. 526
        (App. Div. 2013).

        Eric S. Poe argued the cause for appellant.

        Marc A. Deitch argued the cause for
        respondents (Kent & McBride, attorneys).

        George R. Hardin argued the cause for amicus
        curiae Insurance Council of New Jersey
        (Hardin, Kundla, McKeon & Poletto,
        attorneys; Mr. Hardin and Arthur A.
        Povelones, Jr., on the brief).

    JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

In this appeal we consider whether the issuer of a basic automobile insurance policy, voided due to a fraudulent application, must pay the liability claims of innocent third parties. The insurer takes the position that it should not be required to pay any claims to injured third parties because N.J.S.A. 39:6A-3.1 does not mandate a minimum amount of liability coverage under a basic automobile insurance policy. We disagree and hold that, where a policyholder purchases the basic policy's optional $10,000 coverage for third-party bodily injury in the original contract, the insurer is liable for coverage in that contracted $10,000 amount.

I.

The facts are undisputed. In March 2010, defendant Sabrina Perez applied for an automobile insurance policy with Citizens United Reciprocal Exchange ("CURE" or "the company"). Perez chose a "basic" coverage policy with an optional $10,000 coverage limit for third-party bodily injury liability. CURE's application required Perez to list all household residents of driving age. Perez failed to disclose that defendant Luis Machuca,[1] the father of her two children, was a resident of her household. Based on Perez's application, CURE issued an automobile insurance policy, effective March 23, 2010, that

_____

[1] The caption misspelled Machuca as Machuga.

2

covered Perez's 1997 Honda Accord. Had Perez identified Machuca as a household member of driving age, CURE would not have issued the policy to Perez due to Machuca's poor driving record.

On April 21, 2010, Machuca, operating Perez's automobile with defendant Jonathan Quevedo as his passenger, was involved in an auto accident with defendant-respondent Dexter Green. Green sustained injuries and filed a personal-injury claim against Perez's policy. Machuca also filed a claim for injuries against Perez's policy. CURE denied both personal injury claims and, by letter dated May 27, 2010, informed Perez that her insurance policy was void from the outset because she had fraudulently failed to disclose Machuca on her application.

CURE filed a complaint against Perez, Machuca, and the remaining defendants, seeking a declaratory judgment. CURE sought three particular findings. First, CURE requested that the court declare the insurance policy rescinded and void. Second, CURE asked the court to find that CURE had no obligation to cover any claims that might arise from the accident, including those of Green, the innocent third party. Finally, CURE asked that the court require defendants to reimburse the company for all expenses incurred, including court costs and attorney fees, because Perez had violated the Insurance Fraud Prevention Act ("IFPA"), N.J.S.A. 17:33A-1 to -34.

3

Default judgments were subsequently entered against Perez, Machuca and Quevedo, all of whom failed to respond to CURE's complaint. Green, through his insurance company, defendant-respondent Progressive Garden State Insurance Company ("Progressive"), filed an answer and ultimately agreed to try the case on stipulated facts.

After hearing arguments, the trial court determined that Perez's policy could be rescinded and voided. The court awarded CURE court costs and attorney fees because Perez violated the IFPA. The court further denied all claims asserted by Machuca against Perez's policy, finding that Machuca was part of the fraudulent misrepresentations to CURE.

The trial court noted, however, that in situations where an insurance policy is voided as a result of misrepresentations made by the insured, innocent third parties such as Green are nonetheless entitled to coverage. Relying on New Jersey Manufacturers Insurance Co. v. Varjabedian, 391 N.J. Super. 253 (App. Div.), certif. denied, 192 N.J. 295 (2007), and Marotta v. New Jersey Automobile Full Insurance Underwriting Ass'n., 280 N.J. Super. 525 (App. Div. 1995), aff'd o.b., 144 N.J. 325 (1996), the trial court determined that Green was entitled to $15,000 per-person/$30,000 per-accident coverage ("$15,000/$30,000 coverage"), which the court deemed to be the

4

minimum coverage mandated by New Jersey law.  See N.J.S.A. 39:6A-3; N.J.S.A. 39:6B-1.

CURE appealed the decision, and, in a split decision, the Appellate Division affirmed.  Citizens United Reciprocal Exch. v. Perez, 432 N.J. Super. 526 (App. Div. 2013).  The majority held that insurance carriers may void an insurance policy for fraud even when a claim is filed by an innocent third party.  The majority added, however, that a voided policy is to be molded to the mandatory minimum liability coverage, $15,000/$30,000.  In its explanation, the majority applied the principle announced in Varjabedian and concluded that a carrier seeking to void coverage cannot rely on the basic policy's lack of mandated liability coverage to avoid providing the minimum compulsory $15,000/$30,000 liability limits to innocent third parties.  Noting that the Legislature might wish to consider revisiting the issue, the Appellate Division majority ultimately concluded that Green was entitled to $15,000 for his injuries.

The dissenting member of the panel disagreed, instead asserting that an innocent injured third party should not be entitled to more coverage than that provided under the issued policy.  The dissent contended that the majority opinion was in direct opposition to this Court's holdings in Palisades Safety & Insurance Ass'n v. Bastien, 175 N.J. 144 (2003), and Rutgers Casualty Insurance Co. v. LaCroix, 194 N.J. 515 (2008).  While

5

the dissenting judge did not disagree with the holding in Varjabedian, he found the case inapplicable because it addressed a "standard policy" rather than a "basic policy" like the one at issue here. Ultimately, the dissent concluded that CURE was free to void the policy as it applied to Perez and Machuca, but that the policy could not be voided as to Green, an innocent third party. The dissent explained that Green was entitled to only the amount of liability coverage that the original policy provided -- the optional $10,000 liability limit.

Because a member of the Appellate Division panel dissented, CURE filed an appeal as of right pursuant to Rule 2:2-1(a)(2). In addition, CURE filed a petition for certification with this Court seeking review of several other issues. We granted CURE's petition. Citizens United Reciprocal Exch. v. Perez, 217 N.J. 292 (2014). We also granted amicus curiae status to the Insurance Council of New Jersey ("ICNJ").

II.

A.

Petitioner CURE asserts that the Appellate Division's decision is "wide of the mark." According to CURE, in the wake of the Automobile Insurance Cost Reduction Act (AICRA), N.J.S.A. 39:6A-1.1 to -35, which created a "basic policy" with no requirement of bodily injury liability coverage, automobile drivers no longer have a basis to expect that other drivers will

6

maintain bodily injury liability coverage. CURE relies on Marotta, supra, 280 N.J. Super. at 532, for the proposition that New Jersey requires defrauded insurance carriers to provide benefits to injured third parties to the extent of compulsory insurance coverage required by law on the date of the accident. By this logic, CURE asserts, Green is owed no coverage. CURE criticizes the trial court and Appellate Division's reliance on Varjabedian, which it contends incorrectly interpreted Marotta as requiring $15,000/$30,000 coverage. According to CURE, Marotta required only the minimum coverage mandated by law at the time of the incident, whatever amount that may be.

CURE argues in the alternative that, even if this Court is not persuaded by its "all-or-nothing" argument, the most it can logically owe to Green is $10,000, the amount actually purchased by contract. That amount, CURE contends, should be provided to only those third parties who do not have first-party uninsured/underinsured motorist (UM/UIM) coverage, as the UM/UIM carrier should be the insurer chiefly liable for damages.

In sum, CURE urges this Court to clarify whether, in the wake of AICRA, a voided basic policy permits an innocent third party to recover (1) the minimum standard policy statutory amount; (2) the voided policy limit; or (3) nothing at all.

B.

7

Green and Progressive (collectively "respondents") counter that, regardless of the passage of AICRA and the creation of the "basic policy," a carrier seeking to retroactively void coverage cannot rely on the basic policy's lack of mandated liability coverage to avoid providing the $15,000/$30,000 minimums set by N.J.S.A. 39:6A-3 and 39:6B-1.  Respondents therefore contend that the appellate majority correctly affirmed the trial court's decision pursuant to Varjabedian, supra, which found that "[f]rom the perspective of the insurers' obligation, the required compulsory insurance liability limits remain $15,000/$30,000.  Indeed," respondents stress, "N.J.S.A. 39:6A-3 is titled 'Compulsory automobile insurance coverage; limits.'" 391 N.J. Super. at 258.  Respondents further contest CURE's reliance on Marotta because it preceded AICRA and therefore did not address or interpret the basic policy under that Act.

C.

ICNJ, appearing as amicus curiae, supports the position advanced by CURE.  ICNJ maintains that, under N.J.S.A. 39:6A-3.1, the mandatory minimum bodily injury liability coverage provided by the Legislature for a basic policy is $0 and that both the appellate majority and dissent erred in concluding otherwise.  ICNJ specifically contends that, with the creation of the basic automobile insurance policy under AICRA, the New Jersey Legislature consciously chose to eliminate any minimum

8

compulsory bodily injury coverage so as to decrease the cost of insurance to drivers who might otherwise have operated uninsured vehicles. Accordingly, ICNJ argues that superimposing mandated liability coverage in the event of policy rescission -- where no such coverage is mandated otherwise -- increases the financial impact on insurers and decreases their ability to make affordable insurance coverage available in the market.

ICNJ further contends that it was unjust and inequitable for the lower courts to rely on Varjabedian and thereby increase CURE's liability exposure for Green's claims to $15,000, when its exposure would have amounted to only $10,000 had the policy not been invalidated due to Perez's fraud. In support of that argument, ICNJ cites LaCroix, supra, 194 N.J. at 526, in which this Court declared that a party should not be permitted to improve their claim against an insurance policy solely because a misrepresentation was made in the application process.

### III.

"It is settled that a material factual misrepresentation made in an application for insurance may justify rescission if the insurer relied upon it to determine whether or not to issue the policy." Remsden v. Dependable Ins. Co., 71 N.J. 587, 589 (1976); see also Mass. Mut. v. Manzo, 122 N.J. 104, 115 (1991) (explaining that misrepresentation is material if it "naturally and reasonably influence[s] the judgment of the underwriter in

9

making the contract at all, or in estimating the degree or character of the risk, or in fixing the rate of premiums"). Indeed, we have long stated that "[t]he right rule of law . . . is one that provides insureds with an incentive to tell the truth.  It would dilute that incentive to allow an insured to gamble that a lie will turn out to be unimportant."  Bastien, supra, 175 N.J. at 148 (quoting Longobardi v. Chubb Ins. Co. of N.J., 121 N.J. 530, 541-42 (1990)).

It is undisputed that Perez, by failing to list Machuca as a household member of driving age on her initial application, made a material misrepresentation to CURE from the time of her insurance application through the time of the automobile accident at issue.  Perez's misrepresentation precluded CURE's evaluation not only of the underwriting risk of having a second driver in the household, but also of Machuca's driving record and relevant claims history.  CURE was therefore denied essential information relevant to its assessment of risk and, ultimately, to its decision to issue a policy insuring Perez. Applying the standard we set forth in Remsden, supra, we find that CURE was justified in revoking Perez's policy based on her material factual misrepresentation.  71 N.J. at 589; see also Bastien, supra, 175 N.J. at 149.

IV.

10

Although CURE was indeed able to rescind Perez's policy, thereby depriving her of any coverage as a named insured, "that does not mean that it escapes liability with respect to innocent, third-party members of the public whose protection is a paramount concern of the PIP (Personal Injury Protection), no-fault system."  Bastien, supra, 175 N.J. at 149.  Indeed, we have repeatedly held that, "[e]ven when a policy is rescinded, for such reason as an insured's material misrepresentation in respect of the policy at its inception, PIP benefits may nevertheless remain payable to innocent third parties."  LaCroix, supra, 194 N.J. at 524 (citation omitted); see also Proformance Ins. Co. v. Jones, 185 N.J. 406, 420 (2005); Bastien, supra, 175 N.J. at 149; Marotta, supra, 280 N.J. Super. at 532.

In accordance with the well-established jurisprudence of this State, we find CURE liable for respondents' third-party bodily injury claims.  See LaCroix, supra, 194 N.J. at 523-24; Proformance, supra, 185 N.J. at 420; Bastien, supra, 175 N.J. at 149.  We see no compelling need to depart from the overwhelming precedent and policy considerations supporting that position.

V.

Having determined that CURE is liable for respondents' claims, we now consider the extent of that liability.  We hold that, as the Appellate Division dissent found, CURE is liable

11

for the $10,000 coverage for which Perez opted when she purchased her policy.

A.

New Jersey has a long-established and comprehensive statutory no-fault insurance system "designed to ensure that persons injured in motor vehicle accidents are compensated promptly for their injuries and financial losses by immediate recourse to insurance or public funds."  Craig & Pomeroy, New Jersey Auto Insurance Law § 1:1 (2015); see Amiano v. Ohio Cas. Ins. Co., 85 N.J. 85, 90 (1981); Potenzone v. Annin Flag Co., 191 N.J. 147, 152 (2007).  As this Court explained in Ross v. Transport of New Jersey, the no-fault system centers on the Compulsory Insurance Law, N.J.S.A. 39:6B-1 to -3, which requires that owners of motor vehicles registered or principally garaged in New Jersey maintain liability insurance for certain mandatory minimum amounts.  Ross v. Transport of New Jersey, 114 N.J. 132, 135-36 (1989); see N.J.S.A. 39:6A-3, -6B-1(a).

Prior to 1998, New Jersey automobile insurance law required all drivers to maintain mandatory bodily injury liability protection of at least $15,000 per individual and $30,000 per accident.  This scheme -- known as the "standard policy," N.J.S.A. 39:6A-2(n) -- was formerly the only way an automobile owner in New Jersey could satisfy the compulsory insurance

12

requirement set forth in N.J.S.A. 39:6A-3 and N.J.S.A. 39:6B-1(a).

In 1998, however, as part of AICRA, L. 1998, cc. 21-22, the New Jersey Legislature authorized a "basic automobile insurance policy" as an alternative to the mandatory liability and PIP benefits coverage required under the standard policy. N.J.S.A. 39:6A-3.1. The legislative purpose of this alternative was to reduce the cost of auto insurance so as to make coverage affordable for individuals with limited income, while maintaining a sufficient rate of return to the insurance carriers. N.J.S.A. 39:6A-1.1; N.J.S.A. 39:6A-3.3; Sponsor's Statement to S. 3 (Apr. 24, 1998). Although the basic policy is generally less expensive than the standard policy, it does not include the same level of protection:

> As an alternative to the mandatory coverages provided in sections 3 and 4 of [N.J.S.A. 39:6A-3 and 39:6A-4], any owner . . . may elect a basic automobile insurance policy providing the following coverage:
>
> a. Personal injury protection coverage, for the payment of benefits . . . to the named insured and members of his family residing in his household . . . not to exceed $15,000 per person per accident . . . .
>
> b. Liability insurance coverage insuring against loss resulting from liability imposed by law for property damage . . . in an amount or limit of $5,000 . . . .
>
> c. In addition to the aforesaid coverages required to be provided in a basic automobile

13

insurance policy, <u>optional liability insurance coverage</u> insuring against loss resulting from liability imposed by law for bodily injury or death in an amount or limit of $10,000 . . . in any one accident.

[<u>N.J.S.A.</u> 39:6A-3.1 (emphasis added).]

As made clear by that statutory language, the basic policy, by default, does not provide for or mandate personal liability insurance like its "standard policy" counterpart. <u>N.J.S.A.</u> 39:6A-3.1(c). Nevertheless, the basic policy explicitly offers applicants the option of adding personal injury liability coverage in an amount up to $10,000. <u>Ibid.</u>

Our appellate courts have interpreted the relevant statutory schemes to require $15,000/$30,000 coverage for innocent third parties, which they have deemed to be the mandatory minimum coverage provided under New Jersey law. <u>Marotta</u>, <u>supra</u>, 280 <u>N.J. Super.</u> 525; <u>Varjabedian</u>, <u>supra</u>, 391 <u>N.J. Super.</u> 253. In <u>Marotta</u>, an appellate panel reasoned that an injured third party "has the right to expect that all other drivers will be insured to the extent required by compulsory insurance." <u>Ibid.</u> We affirmed that judgment "substantially for the reasons expressed in the opinion of the Appellate Division." <u>Marotta v. N.J. Auto. Full Ins. Underwriting Ass'n</u>, 144 <u>N.J.</u> 325, 326 (1996). At the time <u>Marotta</u> was decided, however, AICRA had not yet been enacted and the only option for auto

14

insurance was the standard policy, which required every vehicle owner to have $15,000/$30,000 coverage.

In a post-AICRA case, the Law Division ruled that AICRA's basic policy, with its optional liability insurance, overrode the minimum compulsory insurance in New Jersey. Mannion v. Bell, 380 N.J. Super. 259, 260-61 (Law Div. 2005). Under that ruling, the court concluded that there was no longer any compulsory liability insurance. Ibid.

In Varjabedian, supra, the Appellate Division overturned Mannion. 391 N.J. Super. at 260. The panel determined that the basic policy did not displace the compulsory $15,000/$30,000 coverage called for under the policy in issue. Ibid. On the issue of minimum liability coverage required to be provided under the rescinded standard policy with which the panel was grappling, the panel specifically noted:

> The alternative coverage provided by a basic policy under N.J.S.A. 39:6A-3.1 mandates no minimum amount of liability coverage. It only provides for optional liability coverage. The only mandated or compulsory minimum liability coverage limits in our statutes are the $15,000 per injury and $30,000 per accident, prescribed in both N.J.S.A. 39:6A-3 and N.J.S.A. 39:6B-1. Accordingly, a carrier seeking to retroactively void coverage based upon the prior conduct of its insured tortfeasor cannot rely on the alternative basic policy's lack of mandated liability coverage to avoid providing the minimum compulsory non-cancelable $15,000/$30,000 liability limits.

15

[Id. at 260.]

The Varjabedian panel thus concluded that, "[f]rom the perspective of the insurers' obligation, the required compulsory insurance liability limits remain $15,000/$30,000." Id. at 258.

B.

The Appellate Division majority in the instant case relied on that logic from Varjabedian in its determination that, even under basic policies, insurers are liable to innocent third parties for $15,000/$30,000 coverage. Perez, supra, 432 N.J. Super. at 534.

We expressly reject the Appellate Division majority's conclusion that CURE must provide, on a rescinded basic policy, up to $15,000 liability coverage based on the reasoning set forth in Varjabedian. As the dissent determined, Varjabedian is factually inapplicable here. That case involved a standard policy, which, under N.J.S.A. 39:6A-3 and N.J.S.A. 39:6B-1, requires all drivers to maintain mandatory $15,000/$30,000 coverage. This appeal involves a basic policy, which, under N.J.S.A. 39:6A-3.1(c), mandates no minimum bodily injury coverage but provides that the policyholder may elect to purchase such coverage "in an amount or limit of $10,000." Thus, we must consider in this case what amount, if any, Green, as an innocent third party may recover under a voided basic

16

policy that includes the optional $10,000 of coverage permitted by N.J.S.A. 39:6A-3.1(c).

An insured's fraud should not enhance recovery by a third party.  See Bastien, supra, 175 N.J. at 151-52 (disallowing recovery for wife injured when driving husband's car because husband's application did not disclose wife as driver and she, as spouse, was in position to correct application and therefore not innocent third party).  Rather, as we stated in LaCroix, supra, "a claimant [under an automobile policy] must be evaluated as if he or she held the status to which he or she would have been entitled had the named insured completed the application honestly."  194 N.J. at 526.

In LaCroix, an automobile insurance company sought to rescind the insured's policy because he made a material misrepresentation by not including his teenage daughter as a household resident in his insurance application.  Id. at 519. Ultimately, this Court determined that the daughter was an innocent party entitled to recovery under the insurance policy. Id. at 530.  Warning that claims should be assessed as if the policy had not been voided and that an insured's fraud may not enhance the coverage provided by the policy, id. at 526, this Court confirmed that the recovery by the insured's daughter could not exceed the minimum compulsory benefits mandated by

statute for standard policies like the one at issue, id. at 532 (citing Marotta, supra, 280 N.J. Super. at 532).

Here, Perez contracted for third-party bodily injury liability coverage in the amount of $10,000. Although the $10,000 coverage was optional rather than compulsory, it is an option created by statute, N.J.S.A. 39:6A-3.1(c), and is part of our comprehensive scheme of automobile insurance coverage required of motorists on the roadways in New Jersey. Given that the statute aims to encourage drivers to seek coverage, we find that it would be both unjust and contrary to public policy to invalidate and disregard this minimal amount of liability coverage bargained for by the insured. Indeed, a contrary result would undermine the purpose and practicality of this State's comprehensive statutory no-fault insurance system. Bastien, supra, 175 N.J. at 149. It would likewise be improper to hold the insurance carrier liable for an amount in excess of that for which it had previously contracted, such as the $15,000 amount found appropriate in these circumstances by the appellate majority.

Accordingly, we conclude that where an insured elects to add the basic policy's optional $10,000 coverage for third-party bodily injury in their original contract, the insurer shall be liable to innocent third parties for the contracted $10,000 amount as the minimal amount available under our compulsory

18

system of automobile insurance coverage, even when that basic policy is later voided. Thus, evaluating the amount of recovery to which Green would have been entitled had Perez not fraudulently completed her insurance application, we hold that CURE is liable to Green in the amount of $10,000. We further hold that when an insured elects not to add the basic policy's optional $10,000 coverage in their original contract, the insurer shall not be held liable to any injured, innocent third-party claimants under that contract.

## VII.

The judgment of the Appellate Division is, therefore, reversed.


CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, PATTERSON, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE FERNANDEZ-VINA's opinion.

SUPREME COURT OF NEW JERSEY

NO.    A-67                         SEPTEMBER TERM 2013

ON CERTIFICATION TO AND APPEAL FROM    Appellate Division, Superior Court


CITIZENS UNITED RECIPROCAL
EXCHANGE,

        Plaintiff-Appellant,

                v.

SABRINA A. PEREZ, LUIS
MACHUGA, and JONATHAN
QUEVEDO,

        Defendants,

                and

DEXTER GREEN and PROGRESSIVE
GARDEN STATE INSURANCE
COMPANY,

        Defendants-Respondents.


DECIDED          August 13, 2015
                Chief Justice Rabner              PRESIDING
OPINION BY        Justice Fernandez-Vina
CONCURRING/DISSENTING OPINIONS BY
DISSENTING OPINION BY

| CHECKLIST | REVERSE | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |