**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2201-24

JAYRO AGUIRRE PICOITA,

    Plaintiff-Appellant,

v.

PROGRESSIVE GARDEN
STATE INSURANCE CO.,

    Defendant-Respondent.

_____

        Submitted November 10, 2025 – Decided November 24, 2025

        Before Judges Walcott-Henderson and Bergman.

        On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-0006-25.

        Gray Injury Law, PLLC, attorneys for appellant (Josh M. Blane, on the brief).

        Law Office of Hilary M. Kolb, attorneys for respondent (Christoher W. Ferraro, on the brief).

PER CURIAM

In this automobile coverage dispute, plaintiff Jayro Aguirre Picoita appeals from a March 7, 2025 order granting defendant Progressive Garden State Insurance Company's ("Progressive") motion to dismiss his complaint, and denying plaintiff's motion for summary judgment to enter a declaratory judgment setting the underinsured motorist ("UIM") coverage limits at $50,000. Plaintiff argues the court erred in finding: the language of defendant's step-down provision enforceable, defendant provided adequate notice of the step-down provision in the policy; and the language of defendant's step-down provision was neither ambiguous nor misleading. Because we conclude the language in the policy's declaration and step-down provision is ambiguous, we vacate the trial court's order and remand for entry of summary judgment in plaintiff's favor.

The relevant facts are undisputed. On February 2, 2024, plaintiff was injured in an automobile accident while driving a vehicle owned and insured by Juan Osorio Florez ("Florez"), a non-relative. Plaintiff did not own a vehicle, was not named on any vehicle's policy, and did not have any family members that were covered under a vehicle policy. Florez was insured by Progressive under a policy which included UIM coverage of $50,000 for each person and $100,000 for each accident.

Plaintiff instituted a personal injury claim that settled with the tortfeasor's policy limit of $25,000, after obtaining consent from defendant pursuant to Longworth v. Van Houten, 223 N.J. Super. 174 (App. Div. 1988) and notified defendant of her intent to seek UIM benefits under Florez' policy.

Progressive denied plaintiff's claim, relying upon a "step-down" provision in the insurance contract that they purported reduced the availability of UIM benefits to the "mandatory minimum financial responsibility limits specified by the laws of New Jersey." Thereafter, plaintiff filed a declaratory action against defendant seeking UIM coverage be set at the $50,000 limits as clearly stated on the declarations page of the policy, which defendant denied, citing the step-down provision in its policy with Florez. The step-down provision provided:

> If an insured person is:
>
> > 1. not insured as a named insured or spouse under this policy or any other motor vehicle liability policy;
> >
> > 2. not insured as a relative under this policy or any other motor vehicle liability policy; and that
> >
> > 3. not insured under any other motor vehicle policy;
>
> then any recovery for damages for bodily injury for that insured person may equal but not exceed the mandatory

3

> minimum financial responsibility limits specified by the law of New Jersey.
>
> [(emphasis added).]

Defendant asserted the policy limited defendant's UIM coverage and liability to $25,000, the minimum coverage required by the State.

On the same day defendant answered the complaint, plaintiff filed an order to show cause seeking declaratory relief as stated in his complaint, which the court adjourned. Defendant subsequently moved for dismissal pursuant to Rule 4:6-2(e), for failure to state a claim upon which relief can be granted, which was scheduled and addressed prior to the order to show cause hearing. Plaintiff also cross-moved for summary judgment.

The court granted defendant's motion to dismiss; denied plaintiff's cross-motion for summary judgment; and declared "there is no [UIM] to trigger as to [defendant]."[1] The court reasoned plaintiff did not fit into any of the three categories in the step-down provision and that the provision was clear and unambiguous, appeared in a section of the contract titled "LIMITS OF LIABILITY," does not create any reasonable expectation of coverage, and

---

[1] The court did not specify in which order it would evaluate the parties' motions and plaintiff's summary action, nor did the court separate its analysis of each motion in its statement of reasons.

A-2201-24

because the provision was present in the original policy and every renewal, there was no change that necessitated notice to the insured. Additionally, the court noted:

> while [p]laintiff asserts that the [step-down] provision creates an impermissible burden by requiring policyholders to conduct legal research to determine their coverage, the [c]ourt disagrees. The phrase "mandatory minimum financial responsibility limits" is a standard term in insurance law, and policyholders are not left without sufficient guidance in interpreting its meaning.

Plaintiff appealed, arguing the court erred in finding the step-down limitation on UIM coverage to be clear and unambiguous and by granting defendant's dismissal motion on that basis.

I.

We review a trial court's summary judgment decision de novo. DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 180 (2024). "To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)).

We likewise review a court's interpretation of an insurance contract de novo. Katchen v. Gov't Emps. Ins. Co., 457 N.J. Super. 600, 604 (App. Div.

5

2019). Thus, we afford no special deference to a "trial court's interpretation of the law and the legal consequences that flow from established facts." Sealed Air Corp. v. Royal Indem. Co., 404 N.J. Super. 363, 374 (App. Div. 2008) (quoting Pressler & Verniero, Current N.J. Court Rules, cmt. 3.1 on R. 2:10-2 (2026)).

Our Supreme Court has established that we pay "special scrutiny to insurance contracts because of the stark imbalance between insurance companies and insureds in their respective understanding of the terms and conditions of insurance policies." Zacarias v. Allstate Ins. Co., 168 N.J. 590, 594 (2001). "[I]nsurance policies are contracts of adhesion 'between parties who are not equally situated.'" Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 270 (2008) (quoting Meier v. N.J. Life Ins. Co., 101 N.J. 597, 611 (1986)). Additionally, "[i]nsurance policy exclusions must be construed narrowly." Merck & Co., Inc. v. Ace Am. Ins. Co., 475 N.J. Super. 420, 434 (App. Div. 2023) (citing Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95 (1997)). Nevertheless, "insureds are [not] relieved of their ordinary duty to review, and to be bound by the terms of, the policy itself;" however, the reasonable expectation of the policyholder governs where "a close, searching review would not have resolved the ambiguity." Pizzullo, 196 N.J. at 273.

An insurance policy "will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." Norman Int'l, Inc. v. Admiral Ins. Co., 251 N.J. 538, 552 (2022) (quoting Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 525 (2012)). "In considering the meaning of an insurance policy, we interpret the language 'according to its plain and ordinary meaning.'" Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010) (quoting Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175 (1992)).

A policy provision, however, is deemed ambiguous when it is objectively open to more than one interpretation. See Cadre v. Proassurance Cas. Co., 468 N.J. Super. 246, 258 (App. Div. 2021) (quoting Flomerfelt, 202 N.J. at 441). And, we have long held that where the terms are ambiguous, "they are construed against the insurer and in favor of the insured, in order to give effect to the insured's reasonable expectations." Ibid. Additionally, "[w]hen there is ambiguity in an insurance contract, courts interpret the contract to comport with the reasonable expectations of the insured, even if a close reading of the written text reveals a contrary meaning." Zacarias, 168 N.J. at 595.

UIM coverage is defined as "insurance for damages because of bodily injury . . . resulting from an accident arising out of the ownership, maintenance, operation or use of an underinsured motor vehicle." N.J.S.A. 17:28-1.1(e)(1).

7

II.

Plaintiff asserts the court erred in finding there was no dispute "the [step-down] clause . . . is clear and unambiguous," and "the policy language clearly sets forth the conditions under which the [step-down] applies and does not create any reasonable expectation of additional coverage for [p]laintiff." Additionally, plaintiff asserts the policy should be construed from the perspective of a reasonable insured's coverage expectations, the policy is unclear and ambiguous, and that any ambiguity should be resolved in favor of plaintiff, thus voiding the step-down provision.

Defendant argues plaintiff is not entitled to $50,000 in UIM coverage because he was not a "named insured," a "spouse of the named insured," a "relative of the named insured," or "insured under any other policy;" thus, the step-down provision limiting recovery to $25,000 applied. Defendant posits the UIM step-down endorsement "is not the least bit complex," and is clear and unambiguous.

The court found "[p]laintiff's contention that the policy must explicitly reference the applicable statute, provide a specific numerical figure for the step-

down coverage, or use boldface to highlight the provision is not supported by the language of N.J.S.A. 17:28-1."[2]

Pursuant to the above well-established legal principles applicable to insurance matters, we conclude the motion court erred by granting summary judgment in defendant's favor based on its finding the insurance policy was not ambiguous.

In interpreting an insurance policy, a court "must start with the plain language of the policy and give the words 'their plain, ordinary meaning.'" Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 101 (2009) (quoting Zacarias, 168 N.J. at 595). An "insurance policy is an agreement that sets forth, in fundamental terms, the general outlines of coverage." Id. at 102 (additional citations omitted). "If the policy terms are clear, courts should interpret the policy as written and avoid writing a better insurance policy than the one purchased." Id. at 101-02; see also Gibson v. Callaghan, 158 N.J. 662, 669 (1999). "Even exclusionary provisions 'are presumptively valid and will be given effect if specific, plain, clear, prominent, and not contrary to public

---

[2] N.J.S.A. 17:28-1 is likely a typo, as it concerns separate risks in insurance policies and associated premiums. The minimum amount of coverage an insurance company is required to offer for UIM claims is controlled by N.J.S.A. 17:28-1.1. Non-UIM compulsory automobile insurance coverage is codified in N.J.S.A. 39:6A-3.

policy.'" Id. 198 N.J. at 102 (2009) (quoting Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95 (1997)) (additional citations omitted).

However, "[i]f the policy terms are not clear or are ambiguous, courts should 'interpret the contract to comport with the reasonable expectations of the insured.'" Ibid. (quoting Zacarias, 168 N.J. at 595). "[A] genuine ambiguity [arises] where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." Zacarias, 168 N.J. at 595 (quoting Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 247 (1979).

Similarly, "courts will depart from the literal text and interpret [a clause] in accordance with the insured's understanding[,] if the text . . . contains hidden pitfalls[] [and] cannot be understood without employing subtle or legalistic distinctions, or requires strenuous study to comprehend," or "require an entangled and professional interpretation to be understood." Id. at 601 (emphasis added). Moreover, the Plain Language Act, N.J.S.A. 56:12-1 to -13, requires consumer insurance policies to be "simple, clear, understandable and easily readable." See Longobardi, 121 N.J. at 538 (citing N.J.S.A. 56:12-2); see also Boddy v. Cigna Prop. & Cas. Companies, 334 N.J. Super. 649, 654-55 (App. Div. 2000).

A-2201-24

Here, the ambiguity arises from defendant's failure to define the limits of the step-down provision such that the "average policyholder [can] make out the boundaries of coverage." See Passaic Valley Sewerage Com'rs v. St. Paul Fire & Marine Ins. Co., 206 N.J. 596, 608 (2011) (citing Zacarias, 168 N.J. at 604).

The declaration page of the policy clearly states each person is entitled to $50,000 of underinsured motorist coverage. There is no mention this amount will be subject to change based upon each person's relationship to the policy holder. Conversely, the policy's step-down clause states, in pertinent part: "[as applicable to plaintiff,] recovery for damages for bodily injury for that insured person may equal but not exceed the mandatory minimum financial responsibility limits specified by the laws of New Jersey." (emphasis added).

Specifically, the restriction of defendant's UIM coverage to the "limits specified by the laws of New Jersey" is incomprehensible without either "employing subtle or legalistic distinctions . . . or strenuous study to comprehend." Zacarias, 168 N.J. at 601. Therefore, for plaintiff to discover the limits of the step-down provision in this case requires plaintiff not only to search for the controlling statute, but also any case law interpreting the statute as well. Stated differently, defendant, in defining the scope of limitation to "the laws of New Jersey," forces the average policyholder or similarly situated person to

11

plaintiff to employ "legalistic distinctions," or resort to "strenuous study" to determine the boundaries of coverage, which our Court has deemed impermissible. See Zacarias, 168 N.J. at 595, 601. At minimum, an objectively reasonable consumer would have to locate and interpret the two statutes to understand the scope of a policy's coverage, notwithstanding any additional research which must be conducted to discover conflicting statutes and case law.

Moreover, we further conclude the step-down provision is ambiguous because it is subject to multiple interpretations including the differing UIM coverage limits specifically set forth on the declaration page as compared to the step-down clause. See Cadre, 468 N.J. Super. 246, 258. We therefore conclude the court erred in finding the step-down clause enforceable as unambiguous and clear.

Accordingly, we vacate the order dismissing plaintiff's complaint, remand this matter to the motion court for entry of summary judgment in plaintiff's favor, and for consideration of plaintiff's application for attorney's fees and costs.

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

12                                                                    A-2201-24